IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHNNIE F. JETER,
     Petitioner,

v.                                Case No. 5:08cv101/SPM/MD

WALTER A. MCNEIL,
     Respondent.
_____

## REPORT AND RECOMMENDATION

     Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response, submitting relevant portions of the state court record. (Doc. 16). Although given the opportunity to reply, petitioner has not done so. (Doc. 17). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

     On September 12, 2002 petitioner was charged by information filed in the Circuit Court of Bay County, Florida, Case Number 02-2363, with four counts of

Possession of a Controlled Substance (Counts I - IV)[1] (all third-degree felonies) and one count of Possession of Drug Paraphernalia (Count V). (Doc. 16, Ex. A).[2] On October 14, 2002 pursuant to petitioner's no contest plea, the trial court adjudicated petitioner guilty of all four offenses and sentenced him on each count to concurrent terms of six months community control followed by three and one-half years probation. (Ex. B).

On January 23, 2003, petitioner admitted to a violation of community control. The court adjudicated him guilty of the four possession counts and sentenced him to concurrent terms of six months community control followed by the balance of probation to terminate on October 7, 2006. (Ex. C).

On March 17, 2003, petitioner admitted to new violations of community control. His community control was revoked, (ex. C), and he was adjudicated guilty of all four possession counts and sentenced to concurrent terms of two years imprisonment followed by probation until October 7, 2006. (Exs. C, D).

After petitioner's release from prison and entry into probation, on March 3, 2005 a violation of probation affidavit was filed alleging that petitioner had been arrested for possession of controlled substances and other violations. (Ex. E). This arrest led to the filing of charges in Bay County Case Number 05-679 and 05-680. In Case Number 05-679, petitioner was charged by information with four counts of possession of a controlled substance[3] and one count of possession of drug paraphernalia (a pipe). (Ex. F). The alleged offense date was February 25, 2005.

---

[1]Petitioner was charged with one count of possessing methamphetamine, one count of possessing MDMA, one count of possessing Alprazolam, and one count of possessing cannabis. (Ex. A). The offense date was on or about August 18, 2002. (*Id.*).

[2]Hereafter all references to exhibits will be to those provided at Doc. 16 unless otherwise noted.

[3]Petitioner was charged with one count of possessing methamphetamine, one count of possessing Xanex with intent to distribute, one count of possessing Hydrocodone, and one count of possessing Valium. (Ex. F).

(*Id.*).  In Case Number 05-680, petitioner was charged by information with one count of trafficking in a controlled substance.  (Ex. G).  The alleged offense date was February 25, 2005.

On August 2, 2005 petitioner, represented by counsel, executed a Plea, Waiver and Consent form in which he pleaded no contest to the violation of  probation charged in Case Number 02-2363, and to the offenses charged in Case Numbers 05-679 and 05-680.  (Ex. H).  The standard plea waiver and consent form pursuant to which he entered his plea provided, generally, that:  petitioner had been advised of the nature of the charges; he was satisfied with the services and advice of his attorney; he had not been promised leniency in exchange for his plea agreement; he understood and was knowingly waiving his right to plead not guilty, his right to be tried by a jury, his right to compel the attendance of witnesses in his behalf, his right to confront and cross-examine the state's witnesses, and his right to remain silent. The plea form further provided that petitioner waived his right to appeal except with respect to an illegal sentence; that he entered his plea knowingly and voluntarily; that he agreed that the state could prove a *prima facie* case against him; that he had the benefit of counsel with respect to all matters set forth in the plea; and that he could be required to pay costs and, if he was not a U.S. citizen, could be subject to deportation.  (*Id.*) As to sentence, the plea agreement provided that petitioner would be adjudicated guilty and sentenced to 70.1 months imprisonment.  According to the Criminal Punishment Code scoresheet prepared for petitioner's sentencing, petitioner was facing a maximum sentence of 70 years imprisonment and a minimum of 71.2 months imprisonment.  (Ex. I).

The transcript from the change of plea hearing held on August 16, 2005 shows that the state trial court judge questioned petitioner as to his understanding of the nature of the charges and the maximum possible penalty for each charge.  (Ex. J). Petitioner acknowledged his understanding, and further acknowledged his understanding that he would be sentenced to 70.1 months imprisonment.  (*Id.*, p. 4). The judge also inquired of petitioner as to his understanding of the implications of

pleading no contest, and whether he had adequate time to discuss his decision with his attorney. With respect to the latter, petitioner's counsel emphasized to petitioner in open court, "[Y]ou don't need to take this if you don't want to take it. . . . There's two options here. You go to trial and an evidentiary or you take the plea." (*Id.*, p. 5). Petitioner affirmed that he had adequate time to discuss his decision with his attorney, and indicated he had no questions for counsel. Petitioner was present when counsel agreed, for purposes of the plea, that the state could prove a *prima facie* case of guilt. The court determined that petitioner's plea to the charges and admission to the VOP were voluntarily entered, and orally pronounced sentence in accordance with the plea agreement. (*Id.*, pp. 6-7).[4] The court advised petitioner that he could appeal an illegal sentence within the next thirty days. (*Id.*, p. 7). The written judgment and sentence, filed the same day, was consistent with oral pronouncement and the terms of the plea agreement. (Ex. K). Petitioner did not appeal the judgment and sentence.

On September 11, 2006, petitioner filed a petition for belated appeal in the Florida First District Court of Appeal ("First DCA"), alleging that the trial court did not advise him of his right to appeal. (Ex. L). The State responded, noting that petitioner had entered a no contest plea to all charges, that petitioner had not reserved any issues for appeal, that petitioner had not moved to withdraw his plea, and that petitioner had not suggested that his sentence was illegal. (Ex. M). In a supplemental response, the State, citing the plea and sentencing transcript, noted that the court did discuss petitioner's right to appeal, advising him that he "can appeal an illegal sentence in the next 30 days." (Ex. N; *see also* Ex. J, p. 7). The DCA denied the petition for belated appeal on May 2, 2007, without written opinion. *Jeter v. State*, 958 So.2d 925 (Fla. 1st DCA 2007) (Table) (copy at Ex. O). Petitioner moved for rehearing and written opinion (Ex. P), which the court denied on June 26,

---

[4]Petitioner was sentenced to 70.1 months imprisonment on the trafficking offense and to 60 months imprisonment on each of the remaining possession offenses with all sentences to run concurrently. (Ex. J, pp. 6-7).

2007.  (Ex. Q).

On February 8, 2007, petitioner filed a notice of appeal from the August 16, 2005 judgment and sentence.  The First DCA dismissed the appeal on May 8, 2007 in a one-sentence opinion:  "As the notice of appeal was not timely filed, this appeal is hereby dismissed for lack of jurisdiction.  *See* Fla. R. App. P. 9.110(b)."  *Jeter v. State*, 958 So.2d 968 (Fla. 1st DCA 2007).  Rehearing was denied on June 25, 2007. *Id.*

On May 22, 2007, petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  (Ex. R, pp. 1-20).  The court denied the motion on June 21, 2007 without an evidentiary hearing.  (*Id.*, pp. 41-42).  On March 25, 2008 the First DCA affirmed the denial order without written opinion.  *Jeter v. State*, No. 978 So.2d 162 (Fla. 1st DCA 2008) (Table) (copy at Ex. T).  The mandate issued on April 22, 2008.  (Ex. U).

Petitioner initiated the instant federal habeas proceeding on April 7, 2008. (Doc. 1).  He raises five grounds for relief, all attacking the validity of his plea on the grounds that he was not given effective assistance of counsel.  Specifically, he claims trial counsel failed to inform him of the availability of various pretrial motions (and further failed to file those motions) prior to advising petitioner to plead no contest.  Respondent concedes the petition is timely, and that petitioner exhausted his state court remedies with respect to each claim.  (Doc. 16).


## LEGAL STANDARDS

<u>Section 2254 Standard of Review</u>

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state

court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2008).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable

---

[5]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified

that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones*, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## Clearly Established Federal Law Governing Petitioner's Claims

In determining the validity of a plea to a criminal charge, a nolo contendere plea stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S.Ct. 127, 129, 71 L.Ed. 347 (1926); *see also, Vinson v. State*, 345 So.2d 711, 715 (Fla.

1977) (nolo contendere plea admits facts for purpose of pending prosecution and to that extent has same effect as guilty plea insofar as it gives court power to punish). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, at 748. Accordingly, in the context of a guilty plea, the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

In order for a guilty plea to be valid normally it must have a basis in fact, and the defendant must possess an understanding of "the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). This means, among other things, that a defendant must understand not only the nature of the charge against him, but also that his conduct actually falls within the charge. *See McCarthy*, 394 U.S. at 467, 89 S.Ct. at 1171. Similarly, it means that before pleading guilty a defendant should be made aware of possible defenses, at least where the defendant makes known facts that might form the basis of such defenses. *See Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) (en banc) ("The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel.") (internal quotation marks omitted); *Van Poyck v. Fla. Dep't of Corrections*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate."). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar

as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S.Ct. 1441, 1448-49, 25 L.Ed.2d 763 (1970); *Sierra v. Government of Canal Zone*, 546 F.2d 77, 81 (5th Cir. 1977).

When a petitioner challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (citing *Strickland*, 104 S.Ct. at 2065). As applied to the plea situation, the first prong of *Strickland* remains the same. *Hill*, 474 U.S. at 58. However, counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial. In the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.* The Supreme Court has warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must

> make their best judgment as to the weight of the State's case. Counsel
> must predict how the facts, as he understands them, would be viewed
> by a court . . . . Questions like these cannot be answered with certitude;
> yet a decision to plead guilty must necessarily rest upon counsel's
> answers, uncertain as they may be. Waiving trial entails the inherent
> risk that the good-faith evaluations of a reasonably competent attorney
> will turn out to be mistaken either as to the facts or as to what a court's
> judgment might be on given facts. That a guilty plea must be
> intelligently made is not a requirement that all advice offered by the
> defendant's lawyer withstand retrospective examination in a post-
> conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763

(1970).

In order to meet the prejudice prong of the *Strickland* standard, petitioner

must allege more than simply that the unreasonable conduct might have had "some

conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at

2067. Instead, the petitioner must show a reasonable probability exists that, "but for

counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.*, at 694, 104 S.Ct. at 2068. As the Court further explained in *Hill*:

> In the context of guilty pleas, . . . [t]he second, or "prejudice"
> requirement, on the other hand, focuses on whether counsel's
> constitutionally ineffective performance affected the outcome of the
> plea process. In other words, in order to satisfy the "prejudice"
> requirement, the defendant must show that there is a reasonable
> probability that, but for counsel's errors, he would not have pleaded
> guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 58-59.

Finally, when a district court considers a habeas petition, the state court's

findings of historical facts in the course of evaluating an ineffectiveness claim are

subject to the presumption of correctness, while the performance and prejudice

components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104

S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

## PETITIONER'S GROUNDS FOR RELIEF

As noted previously, all of petitioner's grounds for relief challenge the validity of his plea on grounds of ineffective assistance of counsel. Petitioner's first ground alleges that counsel advised him to plead no contest without informing him of the availability of a motion to suppress which, according to petitioner, would have been successful. The remaining grounds concern counsel's failure to advise petitioner of various bases for dismissal of the charges (and counsel's failure to move for dismissal on those bases) prior to advising him to plead no contest. Because the allegations supporting petitioner's claims are interrelated, the court will provide a consolidated version of the facts set forth in the petition. This does not mean the court accepts them as true.

<u>Petitioner's version of the events giving rise to his arrest and prosecution</u>

Approximately one week prior to petitioner's arrest, one or more individuals (Brian Truitt, William Parr, and/or Mark Redd) who had been arrested on firearms or methamphetamine related charges, identified petitioner as someone who had sold or trafficked in methamphetamine. (Doc. 1, p. 6). Based on this information and petitioner's criminal history (the fact that he was on probation for methamphetamine related charges), police made petitioner a "target" for investigation, and "orchestrated events that allegedly involved [petitioner] in trafficking in methamphetamine." (*Id.*, pp. 6-7). Petitioner elaborates on these "orchestrated events" as follows. Police provided informant Casey Wright with over 200 grams of methamphetamine (hereinafter "meth") oil to deliver to petitioner. (*Id.*, p. 7). Casey Wright, however, "double crossed" police and gave the meth oil to Jeff Frye to convert it to meth product that could be sold. Jeff Frye was arrested and, when asked where he obtained the meth oil, told police he obtained it from petitioner. (*Id.*, pp. 8, 9).

Although petitioner contends Wright "double crossed" police by delivering the meth oil to Jeff Frye instead of petitioner, petitioner also contends police <u>knew</u> the

meth oil found in Frye's possession came from Casey Wright and not petitioner. (*Id.*). Petitioner further alleges that police knew Frye was lying when he told police he picked up the meth oil from petitioner at 4:30 p.m. in the parking lot of an apartment complex in Panama City; because the police stated they observed the exchange occur at 4:00 p.m. in the parking lot of petitioner's apartment complex located on Panama City Beach, over 10 miles away from the location described by Frye. (*Id.*, pp. 9, 10).

Petitioner explains that "except for perhaps the double cross, Wright and Frye were operating at the direction and control of Detective Bagwell, either directly or indirectly, to arrest and convict petitioner for a crime(s) which they themselves created." (*Id.*, p. 8). Petitioner complains that, "At no time was petitioner found in possession of any drugs or chemicals to manufacture the drugs, whereas Frye was found to be in possession of not only the drugs but also the chemicals to convert the meth oil to a useable and sellable meth chemical." (*Id.*). Petitioner alleges that the drugs and drug paraphernalia providing the physical evidence in his case were found in his apartment which he shared with his live-in girlfriend Tarah Deaton. (*Id.*, pp. 11-12). According to petitioner, Ms. Deaton "pleaded out to being responsible for owning such items and sentenced to probation." (*Id.*, p. 12).

Based on the foregoing alleged facts, petitioner makes the following claims.

<u>Ground 1</u>  Trial counsel was ineffective for <u>"not moving to suppress all evidence collected, after police were given petitioner's name as a source for possessing and/or trafficking in methamphetamine, because police knew or should have know[n] the information and claim was false or that they had no reasonable suspicion to believe defendant was committing, about to commit, or had committed an offense."</u> (Doc. 1, p. 6)

Petitioner asserts police officers targeted him for investigation as a source of methamphetamine based on his criminal history and on the statement of one or more individuals that he used to sell methamphetamine. Petitioner claims this targeting was illegal because it was based on past criminal activity instead of a

reasonable suspicion of present criminal conduct. Petitioner states that after "illegally" targeting him, police "orchestrated events" which led to his arrest and the seizure of evidence from his apartment. Petitioner maintains that since the evidence was the product of the initial "illegal targeting," it was subject to suppression. He faults defense counsel for failing to inform him of the availability of a motion to suppress, asserting that had counsel done so, he "would not have pleaded no contest and insisted on counsel filing this motion and the court would have been constitutionally required to grant it. . . ." (*Id.*, p. 7).

A.    **State Court Decision**

Petitioner raised this and numerous other grounds of ineffective assistance in his Rule 3.850 motion. (Ex. R). The Rule 3.850 court denied relief, addressing all of petitioner's grounds collectively as follows:

> In his motion, Defendant claims that his counsel provided ineffective assistance in failing to move to suppress the evidence against him or to file a motion to dismiss the charges on numerous grounds. In order to prevail on a claim [of] ineffective assistance of counsel, a defendant must show both substandard performance by counsel and prejudice caused by that performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant is mistaken regarding counsel's obligations to assert a defense at trial versus submitting a plea to the Court. As outlined above, Defendant chose to plead no contest to the charges in exchange for a reduced sentence, rather than risk the outcome of a trial. Had Defendant wished to assert his innocence, he could have declined the State's plea offer and elected to go to trial. Instead, he chose to accept a lesser sentence to avoid risking the outcome of a trial. Accordingly, defense counsel was not required to investigate the case further or to submit evidence concerning Defendant's innocence to the Court. Counsel was not ineffective for failing to investigate and file pretrial motions when Defendant chose to enter a guilty plea. Further, Defendant's plea agreement shows that his plea was freely and voluntarily entered (attached).

(Ex. R, p. 41)  The state appellate court affirmed.

**B.    Federal Review of State Court Decision**

The state court correctly identified *Strickland* as the controlling legal standard. To the extent the court concluded that counsel was not ineffective for failing to investigate and present evidence of petitioner's innocence <u>following</u> entry of his plea, its decision was neither contrary to, nor an unreasonable application of the *Strickland* standard.   However, that does not dispose of the issue of counsel's conduct <u>leading up</u> to the plea.   It is does not appear the state court evaluated whether counsel was reasonable in failing to take particular actions <u>prior to</u> petitioner entering his plea, or whether her alleged inaction affected the plea process itself (petitioner's ability to make an informed choice between entering a no contest plea and going to trial).   Regardless, petitioner is not entitled to federal habeas relief on this claim, because *de novo* review reveals it is without merit.

Petitioner contends that <u>prior</u> to advising him concerning the plea, counsel had a duty to inform him that he could seek suppression of the evidence  as the product of an "illegal" investigation.  He does not specifically assert under what legal theory the drugs and drug paraphernalia warranted suppression, except to cite to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Wallace v. State*, 964 So.2d 722 (Fla. 2nd DCA 2007).

The question in *Terry* was whether, and under what circumstances, a police officer may approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.   *Terry* also approved a protective search for weapons (without a warrant based on reasonable suspicion) when the officer was justified in believing that the person may be armed and presently dangerous.  *Id.* at 24, 88 S.Ct. at 1881.  The question in *Wallace,* was whether the police in that case had a well-founded suspicion to conduct an investigatory detention of the defendant.  *Wallace*, 964 So.2d at 726-27.  Unlike *Terry* and *Wallace*, the conduct at issue here was the mere decision to make petitioner the subject of a routine criminal investigation or sting operation, <u>not</u> an investigatory

<u>detention</u> or <u>search</u>.

Petitioner does not cite, nor has this court found, any legal authority supporting the proposition that merely initiating a routine criminal investigation constitutes an investigatory stop, search or seizure under the Fourth Amendment (or put another way, that a police officer must have a reasonable suspicion of criminal activity before initiating such an investigation). Neither *Terry* nor *Wallace* supports that proposition and, in fact, the Supreme Court has upheld the constitutionality of such conduct. *Jacobson v. United States*, 503 U.S. 540, 549, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992) (holding that "an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs and, if the offer is accepted, make an arrest on the spot or later."); *cf. Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (official conduct that does not compromise any legitimate interest in privacy is not a search). To the extent petitioner implies that he was improperly induced by government agents to engage in a drug transaction when he was not predisposed to do so prior to the inducement, he is essentially arguing he was entrapped. As discussed below, entrapment is an affirmative defense. *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Fla. Stat. § 777.201(1) (establishing statutory defense of entrapment). As a defense to a criminal charge, this concept does not provide for the suppression of evidence as a remedy.

In light of the complete lack of viability of a motion to suppress on the basis petitioner proffers, this court cannot say defense counsel was "constitutionally compelled" to seek suppression of the evidence (or advise petitioner of the viability of a motion to suppress) prior to advising him about pleading no contest. Because petitioner has not established that counsel's conduct was deficient on the suppression issue (and therefore that his plea was invalid), he is not entitled to federal habeas relief on this claim.

**Ground 2**  **Trial counsel was ineffective for failing to file a motion to dismiss the charges based on outrageous governmental misconduct and entrapment.** (Doc. 1, p. 7).

In his second ground for relief, petitioner contends that before advising him to plead no contest, counsel should have moved to dismiss the charges on the grounds of outrageous governmental misconduct and entrapment, citing *Jacobson v. United States, supra*, and *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The particular conduct he challenges is: (1) the police using an informant (Casey Wright) to provide petitioner an opportunity to participate in a drug transaction involving meth oil, knowing petitioner was on probation for meth-related charges;[6] (2) the informant (Casey Wright) "double crossing" police by giving the meth oil to Jeff Frye; (3) the police reporting that at the time of Jeff Frye's arrest he said he obtained the meth oil from petitioner "even though they knew that did not occur;" (4) the police releasing Jeff Frye from custody even though he was found in possession of drugs at the time of his arrest; (5) the police not releasing petitioner, who had no drugs in his possession upon arrest; (6) the police offering petitioner a substantial assistance agreement after his arrest;[7] and (7) "at all times, except for perhaps the double cross, Wright and Frye had been operating at the direction and control of Detective Bagwell, either directly or indirectly, to arrest and convict petitioner for a crime(s) which they themselves created." (Doc. 1, pp. 7-8).

As a threshold matter, the court will briefly discuss the defense of entrapment and the doctrine of outrageous government conduct. Entrapment is an affirmative

---

[6]Specifically, petitioner says it was outrageous for the police  to give Casey Wright meth oil to deliver to petitioner "so that they could have a trafficking methamphetamine charge such as this one to arrest and convict him for with guaranteed prison time -- especially in view of the fact that they knew he was currently on probation for methamphetamine related offenses." (Doc. 1, p. 7).

[7]Specifically, petitioner complains that "[o]nce police had arrested [petitioner] for this charge with threat of prosecution and liberty hanging in the balance, police would attempt to secure petitioner's assistance to work for them turning in people he knew that dealt in methamphetamine or other such related charges."  (Doc. 1, p. 8).

defense requiring government inducement of the crime and the defendant's lack of predisposition to commit the crime before the inducement. Whether a defendant was entrapped is a subjective inquiry focusing on the predisposition of the defendant to commit the offense. *Sorrells v. United States, supra* (recognizing, as a matter of statutory construction, availability of entrapment as a defense and establishing subjective test); *Jacobson, supra* (applying subjective test); *Russell, supra*, 411 U.S. at 429, 435 (reaffirming the subjective entrapment defense; rejecting an "objective" approach focused on the government's conduct, explaining that entrapment "is rooted, not in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been 'overzealous law enforcement,' but instead in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense but was induced to commit them by the Government."); Fla. Stat. 777.201(1) (establishing statutory defense of entrapment); *Munoz v. State*, 629 So.2d 90, 101 (Fla. 1993) (holding that through Fla. Stat. § 777.201, the Florida legislature established entrapment as a statutory defense to be evaluated under the federal subjective entrapment test).

Unless the facts are undisputed, the issue of a defendant's predisposition is an issue for the jury. *See United States v. Freed*, 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971) (noting that the question of entrapment "is an issue for the trial, not for a motion to dismiss."); Fla. Stat. § 777.201(2) ("The issue of entrapment shall be tried by the trier of fact."); *see also United States v. Tucker*, 28 F.3d 1420, 1428 (6th Cir. 1994) ("To warrant dismissal before trial on the ground that the defendant was entrapped as a matter of law, this court has held that 'the undisputed evidence must demonstrate a patently clear absence of predisposition.").

However, when the evidence presents no genuine dispute as to whether the defendant was entrapped, there is no factual issue for the jury, and the judge must

rule on the defense as a matter of law. *See Munoz*, 629 So.2d at 101 (reinstating trial court's order dismissing charges against the defendant after concluding that undisputed facts established defendant was entrapped as a matter of law); *State v. Ramos*, 632 So.2d 1078 (Fla. 3d DCA 1994) (holding that although statute provided that issue of entrapment be submitted to jury, trial court had authority to rule on issue of predisposition as a matter of law where factual issues were not in dispute); *State v. Henderson, supra*, (reviewing trial court's order granting motion to dismiss charge on grounds of subjective entrapment); *Marreel v. State*, 841 So.2d 600 (Fla. 4th DCA 2003) (affirming trial court's order (entered prior to defendant's guilty plea) denying motion to dismiss based on subjective entrapment; concluding there was no improper inducement by law enforcement and that defendant was predisposed to commit the offense); *see also* Fla. R. Crim. P. 3.190 (providing for the filing of pretrial motion to dismiss on the grounds of a defense, for "objections based on fundamental grounds," and under other circumstances, including where "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant.").

Although a claim of entrapment on the basis of outrageous government conduct is sometimes referred to as a defense, it is not an affirmative defense like entrapment; rather it is a judicially established legal principle based on due process principles. 75A Aм. Jur. 2d *Trial* § 701 (2d ed.) (2009 Supp.);[8] *see also*

---

[8]The "outrageous governmental misconduct" doctrine is borne out of dicta in *United States v. Russell, supra*, the case to which petitioner cites in support of this claim. *Russell* arose in the context of undercover governmental drug operations in which the government provided the defendant with a scarce ingredient essential for manufacturing an illicit substance. The defendant contested the degree of governmental participation in the criminal enterprise. The Supreme Court reaffirmed the principle that the entrapment defense "focus[es] on the intent or predisposition of the defendant to commit the crime," *Russell*, 411 U.S. at 429, 93 S.Ct. at 1641, rather than upon the conduct of government agents. In dicta, the Court noted that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction," *id.* at 431-32, but held that the law enforcement conduct in that case was "distinctly not of that breed." *Id.*, at 432.

In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), a defendant

attempted to invoke *Russell*'s dicta, arguing that the fact that the heroin he sold to government agents was supplied to him by a government informant, i.e., that the government had provided a substance which was both illegal and constituted the Corpus delicti for the sale of which he was convicted, constituted conduct so outrageous as to violate due process. Noting that the defendant conceded he was predisposed to commit the crime and therefore that the defense of entrapment was not available to him, the Court rejected the due process claim, explaining:

> The limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant. Here, as we have noted, the police, the Government informant, and the defendant acted in concert with one another. If the result of the governmental activity is to "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission . . .," *Sorrells, supra*, 287 U.S., at 442, 53 S.Ct., at 212, 77 L.Ed., at 417, the defendant is protected by the defense of entrapment. If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law. *See O'Shea v. Littleton*, 414 U.S. 488, 503, 94 S.Ct. 669, 679, 38 L.Ed.2d 674, 687 (1974); *Imbler v. Pachtman*, 424 U.S. 409, pp. 428-429, 96 S.Ct. 984, 994, 47 L.Ed.2d 128, 142-143 (1976). But the police conduct here no more deprived defendant of any right *491 secured to him by the United States Constitution than did the police conduct in *Russell* deprive Russell of any rights.

*Hampton*, 425 U.S. at 490-491, 96 S.Ct. at 1650.

Despite the willingness of courts to quote *Russell*'s dicta in subsequent opinions, it has had very little practical effect. *See United States v. Pitt*, 193 F.3d 751, 759-60 (3rd Cir. 1999); *United States v. Noriega*, 117 F.3d 1206, 1214 n. 5 (11th Cir. 1997); *United States v. Lacey*, 86 F.3d 956, 963-64 (10th Cir. 1996); *United States v. Boyd*, 557 F.3d 239, 241 (7th Cir. 1995) (stating that the outrageous governmental misconduct doctrine "never had any life," and holding that the doctrine does not exist in the Seventh Circuit); *United States v. Tucker*, 28 F.3d 1420, 1426-27 (6th Cir. 1994) (concluding that "there is no binding Supreme Court authority recognizing a defense based solely upon an objective assessment of the government's conduct in inducing the commission of crimes. . . . The only case squarely holding that an objective assessment of the government's conduct in a particular case may bar prosecution without regard for the defendant's predisposition has been greatly criticized, often distinguished and, recently, disavowed in its own circuit."); *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993) (stating that "the doctrine [of outrageous governmental misconduct] is moribund; in practice, courts have rejected its application with almost monotonous regularity."). In *United States v. Sanchez*, 138 F.3d 1410 (11th Cir. 1998), the Eleventh Circuit noted that "[w]hile the Supreme Court and this Court have recognized the possibility that government involvement in a criminal scheme might be so pervasive that it would be a constitutional violation, that standard has not yet been met in any case either before the Supreme Court or this Court." *Id*. at 1413. The defense can be invoked only in the "rarest and most outrageous circumstances." *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000).

The Florida Supreme Court has determined in limited circumstances that law enforcement conduct violated a defendant's due process rights under the Florida Constitution. In *State v. Glosson*, 462 So.2d 1082 (Fla. 1985), the court determined that the undisputed behavior of law enforcement officials in entering into a contingency contract to obtain convictions, i.e., agreeing to pay the

*United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995) ("**Outrageous government conduct is not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed.**"). "**Whether the government's conduct is sufficiently outrageous to violate due process is a question of law [for the court] and not an issue for the jury. Outrageous conduct, if found by the judge, bars the government from invoking judicial process to obtain a conviction.**" *Id.*; *Munoz*, 629 So.2d at 98 (**indicating that dismissal is the remedy for egregious law enforcement misconduct in violation of the due process provision of the Florida Constitution**); *State v. Williams*, 623 So.2d 462, 465 (Fla. 1993) ("**While we must not tie law enforcement's hands in combating crime, there are instances where law enforcement's conduct cannot be countenanced and the courts will not permit the government to invoke the judicial process to obtain a conviction.**"); *State v. Glosson*, 462 So.2d 1082, 1085 (Fla. 1985) (**holding that "governmental misconduct which violates the constitutional due process rights of a defendant, regardless of that defendant's predisposition, requires the dismissal of criminal charges"**); *Cline v. State*, 958 So.2d 961 (Fla. 4th DCA 2007) (**reviewing trial court's order (entered prior to defendant's no contest plea) denying motion to dismiss on grounds of objective entrapment**); *Madera v. State*, 943 So.2d 960 (Fla. 4th DCA 2006) (**ordering that conviction based on defendant's no contest plea be set aside and that defendant's motion to dismiss, filed prior to entry of his no contest plea, be granted on grounds of objective entrapment**).

### A.  State Court Decision

**The state court's adjudication of this claim is detailed above.**

---

informant ten percent of all civil forfeiture proceedings conditioned upon his cooperation and testimony in the criminal prosecution, violated the due process clause of the Florida Constitution. Later, in *State v. Williams*, 623 So.2d 462 (Fla. 1993), the Florida Supreme Court reached a similar conclusion, finding that the undisputed conduct engaged in by law enforcement agents, i.e., the manufacture of crack for sale within 1000 feet of a school, was illegal.

**B.     Federal Review of State Court Decision**

As with Ground 1, it is does not appear the state court evaluated whether counsel was reasonable in failing to take this particular action <u>prior to</u> petitioner entering his plea, or whether her alleged inaction affected the plea process itself (petitioner's ability to make an informed choice between entering a no contest plea and going to trial).  Regardless, petitioner is not entitled to federal habeas relief on this claim, because *de novo* review reveals it is without merit.

In order for petitioner to succeed on this ground for relief, he must establish that counsel was objectively unreasonable in failing to file a pretrial motion to dismiss (or for failing to advise petitioner he had a viable basis for seeking dismissal of the charges) prior to advising petitioner to accept the plea offer.  Petitioner has not met this standard for several reasons.

First, this claim is grounded in petitioner's self-serving allegations based almost entirely on speculation and innuendo as opposed to personal knowledge (what Casey Wright said and did outside petitioner's presence, what Jeff Frye said and did outside petitioner's presence; what police knew or didn't know), none of which are supported by any other specific credible evidence in the record. Furthermore, petitioner provides only snipets of information, providing a conveniently incomplete and at times inconsistent version of the circumstances surrounding his arrest.  For example, he condemns police for crediting Jeff Frye's statement that he got the meth oil from petitioner, arguing that they knew Frye was lying; yet he also contends the police were duped, and still further suggests that Frye may not have made that statement at all.[9]  Petitioner also fails to explain how any of this relates to his later criticism (albeit in support of a different ground for relief) that Frye's description of a meth oil exchange between himself and petitioner

---

[9]Petitioner says Jeff Frye "supposedly" told police he obtained the meth oil from petitioner, suggesting that Frye may not have said that.  (Doc. 1, p. 8).

varied from law enforcement's description of an exchange they observed between Frye and petitioner. This court will not "'blindly accept speculative and inconcrete claims. . . .'" *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)). Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record to be of probative evidentiary value. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'") (citation omitted); *see also Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[10]

Second, petitioner does not allege that he ever related to defense counsel information about Casey Wright's "double cross," Jeff Frye's lie (or law enforcement's fabrication of Jeff Frye's statement), or law enforcement's alleged intentional use of false information to justify petitioner's arrest and prosecution. Nor does petitioner allege that such information was reasonably available to counsel from another source. Counsel cannot be deficient for failing to make petitioner aware of these possible defenses, unless petitioner made known to her the facts supporting them. *See also Chandler v. United States*, 218 F.3d at 1324 ("The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel.") (internal quotation marks omitted); *see also Van Poyck v. Fla. Dep't of Corrections, supra*; *Collins v. Francis*, 728 F.2d 1322, 1349 (11th Cir. 1984) (holding that counsel was not ineffective for failing to investigate witnesses in mitigation when defendant failed to

---

[10]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

alert counsel to their existence).

Third, even if counsel was aware of the information petitioner now relates, his allegations are insufficient to establish that counsel was "constitutionally compelled" to seek pretrial dismissal of the charges on grounds of entrapment. In order for this motion to be available, the facts would have to be undisputed. The record reveals that was not the case. The "facts" upon petitioner relies to support his claim of entrapment directly dispute law enforcement's purported version, including whether or not petitioner engaged in the acts attributed to him. He essentially contends that everyone but him was lying. And, as noted above, even his own allegations are at times internally contradictory, contending on the one hand that police were duped and on the other that they were complicit with Wright's and Frye's underhanded activities.

A reasonable attorney would view the disputed nature of the facts as highly problematic, indeed fatal, to a pretrial motion to dismiss based on entrapment. This court cannot say that counsel was "constitutionally compelled" to advise petitioner of this nonviable motion before advising him to plead no contest. Furthermore, petitioner cannot reasonably argue that had counsel discussed this nonviable motion with him, he would have declined the plea offer of 70 <u>months</u> in prison and insisted on going to trial with the risk that he would be convicted and sentenced to 70 <u>years</u> in prison. For the same reasons, petitioner cannot establish that a pretrial motion to dismiss based on outrageous government conduct had a reasonable probability of success such that counsel's failure to file it affected the plea process.

As petitioner has not established deficient performance and prejudice concerning counsel's failure to file a pretrial motion to dismiss on grounds of entrapment and outrageous government misconduct, his claim must fail.

<u>Ground 3</u>    <u>Trial counsel was ineffective for failing to file a motion to dismiss the charges because the evidence was legally insufficient to support the charges given that Frye's claim that petitioner gave him the drugs at an apartment complex was inconsistent with the information police</u>

**allegedly knew from observation.  (Doc. 1, p. 9)**

In this ground for relief, petitioner contends trial counsel was ineffective for failing to file a pretrial motion to dismiss "on the basis of th[e] inconsistency" between the facts provided by Jeff Frye as to when and where petitioner gave him the meth oil, and the facts related by the police as to their observation of an exchange.  (Doc. 1, p. 10).  According to petitioner, these "diametrically opposed versions of 'facts' as to when petitioner allegedly gave the  meth oil to Frye" "cancelled each other out," thereby rendering the evidence insufficient to support the charges.

A.      **State Court Decision**

The state court's adjudication of this claim is detailed above.

B.      **Federal Review of State Court Decision**

As with the foregoing grounds, it does not appear the state court evaluated whether counsel was reasonable in failing to take this particular action <u>prior to</u> petitioner entering his plea, or whether her alleged inaction affected the plea process itself (petitioner's ability to make an informed choice between entering a no contest plea and going to trial).  Regardless, petitioner is not entitled to federal habeas relief on this claim, because *de novo* review reveals it is without merit.

In support of this claim, petitioner cites to *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), and *United States v. Chancey*, 715 F.2d 543 (11th Cir. 1983).  In *Chancey*, 715 F.2d 543 (11th Cir. 1983), the Eleventh Circuit held:

> Credibility issues are for the determination of the jury.  However, defendants may not be convicted if the evidence is insufficient to persuade a rational factfinder beyond a reasonable doubt that the defendant is guilty, *see, e.g., Davis v. United States*, 160 U.S. 469, 493, 16 S.Ct. 353, 360, 40 L.Ed. 499 (1895); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652 (1982).
>
> After analyzing the evidence in the light most favorable to conviction a directed verdict of acquittal is required if no reasonably

**minded jury (rational factfinder) could believe from that evidence
beyond a reasonable doubt that the defendant is, in fact, guilty.**

*Id.*, at 546. As noted in the *Chancey* opinion, that case arose in the context of a
motion for judgment of acquittal. A motion for judgment of acquittal is available
only after the government closes its evidence, after the close of all the evidence, or
after a jury verdict, and is based on the evidence adduced at trial. Fed. R. Crim. P.
29; Fla. R. Crim. P. 3.380. Petitioner cites no state or federal authority, and this
court has found none, providing for dismissal of charges <u>prior to trial and the
presentation of any evidence</u>, based on "inconsistent" evidence or the weight of the
evidence. Florida Rule of Criminal Procedure 3.190© governing pretrial motions to
dismiss in criminal cases, was not available to address the "inconsistent evidence"
issue.[11]

---

[11]As the state appellate court in *State v. Ortiz*, 766 So.2d 1137 (Fla. 3d DCA 2000), explained:

[O]n a motion made pursuant to Rule 3.190(c)(4), the state is entitled to the most
favorable construction of the evidence with all inferences being resolved against the
defendant. *See State v. Paleveda*, 745 So.2d 1026, 1027 (Fla. 2d DCA 1999) (stating
that "[w]hen considering a defendant's rule 3.190(c)(4) motion to dismiss, all
questions and inferences from the facts must be resolved in favor of the state."); *State
v. Hunwick*, 446 So.2d 214, 215 (Fla. 4th DCA 1984) (holding that "[o]n a motion to
dismiss, the state is entitled to a construction most favorable to it; all inferences are
resolved against the defendant."). To counter a motion to dismiss, the state need not
adduce evidence sufficient to sustain a conviction. *See State v. Fetherolf*, 388 So.2d
38, 39 (Fla. 5th DCA 1980) (holding that "[t]o counter a motion to dismiss, the state
need not produce evidence sufficient to sustain a conviction. The proceeding is not
designed to create a trial by affidavit or a 'dry run' of a trial on the merits").

Indeed, it is clear that in considering such a motion, the trial court is not
permitted to make factual determinations nor consider either the weight of the
conflicting evidence or the credibility of the witnesses. *Fetherolf*, 388 So.2d at 39
(stating that "[i]t is not proper [on a rule 3.190(c)(4) motion] for the court to determine
factual issues, consider weight of conflicting evidence, or credibility of witnesses.").
*See also State v. Gutierrez*, 649 So.2d 926, 928 (Fla. 3d DCA 1995)("On a motion to
dismiss, if the affidavits and depositions filed in support of or in opposition to the
motion create materially disputed facts, it is improper for the trial court to determine
factual issues and consider the weight of conflicting evidence of credibility of
witnesses."). "Even if the trial court doubts the sufficiency of the state's evidence, it
cannot grant a motion to dismiss criminal charges simply because it concludes that
the case will not survive a motion for a judgment of acquittal." *Paleveda*, 745 So.2d

Given that a pretrial motion to dismiss on the grounds of "inconsistent evidence" was not available because it had no basis in law, petitioner has not established that counsel was deficient for failing to file it (or advise him that it was available). Nor can he reasonably argue that counsel's failure to file that motion affected the plea process. As petitioner has not shown that ineffective assistance caused him to enter an invalid no contest plea, he is not entitled to federal habeas relief on this claim.[12]

**Ground 4**     **Trial counsel was ineffective for failing to file a motion to dismiss the possession charges on the grounds that the paraphernalia and methamphetamine residue found in the paraphernalia, as well as the pills, were not found in petitioner's possession, but in the apartment he shared with his live-in girlfriend.** (Doc. 1, p. 10).

In this ground for relief, petitioner alleges he told defense counsel that he shared his apartment with his live-in girlfriend Tarah Deaton, and that the drugs and drug paraphernalia were not found in his actual possession upon arrest but in the apartment. (Doc. 1, p. 11). Petitioner contends counsel was ineffective for failing to file a pretrial motion to dismiss the charges on the grounds that petitioner "was not found in actual or constructive possession" of the drug paraphernalia or drugs. (*Id.*). In support of this claim he cites to *United States v. Morrison*, 449 U.S. 361, 365-67 (1981) and *Harris v. State*, 954 So.2d 1260 (Fla. DCA 2007).

    **A.**     **State Court Decision**

The state court's adjudication of this claim is detailed above.

    **B.**     **Federal Review of State Court Decision**

---

at 1027. . . .

*Id.,* 766 So.2d at 1142.

[12]Indeed, the evidence provided by the plea form and plea colloquy establishes that petitioner's plea was knowing, intelligent and voluntary. (Exs. H, J). As part of his plea, petitioner acknowledged under oath that "the State of Florida can prove a prima facie case." (Ex. H, p. 3). He also chose to waive his right to cross examine the state's witnesses on any alleged inconsistencies. (Exs. H, J). Petitioner cannot now seek to invalidate his plea on the grounds that the state's evidence was inconsistent and insufficient to establish his guilt.

As with the foregoing grounds, although it does not appear the state court evaluated whether counsel was reasonable in failing to take this particular action <u>prior to</u> petitioner entering his plea, or whether her alleged inaction affected the plea process itself (petitioner's ability to make an informed choice between entering a no contest plea and going to trial), petitioner is not entitled to federal habeas relief on this claim, because *de novo* review reveals it is without merit.

For the possession charges, the statute under which petitioner was charged, Florida Statutes Section 893.13(6)(a), provided:

> It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter.

Fla. Stat. § 893.13(6)(a) (2004).

As mentioned earlier, Florida Rule of Criminal Procedure 3.190(c)(4) provides for pretrial dismissal of charges when a defendant demonstrates that "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." Here, even assuming to petitioner's benefit that it was undisputed that the goods were not in his <u>actual</u>, physical possession at the time of his arrest, petitioner has not demonstrated that the facts supporting a <u>constructive</u> possession charge were undisputed and failed to establish a prima facie case of guilt.

In order to prove a prima facie case of constructive possession, the state must show that:  the defendant knew of the presence of the contraband; that he had the ability to exercise dominion and control over the contraband; and that he had knowledge of the illicit nature of the contraband.  *Garmon v. State*, 772 So.2d 43, 47 (Fla. 4th DCA 2000); *Ogle v. State*, 820 So.2d 1054, 1056 (Fla. 4th DCA 2002) ("To prove constructive possession of contraband, the state must show that the

defendant had dominion and control over the contraband, knew it was within his presence, and had knowledge of its illicit nature.") (citing *Brown v. State*, 428 So.2d 250, 252 (Fla. 1983)). "If the premises where the contraband is found is in joint possession of the defendant, knowledge of the presence of the contraband and the ability to control same must be established by independent proof." *Ogle, supra* (citing *Moffatt v. State*, 583 So.2d 779, 781 (Fla. 1st DCA 1991)).

Although the fact that the contraband was found in an apartment petitioner shared with his girlfriend is relevant, it is not the <u>only</u> relevant fact, and its mere existence does not defeat a constructive possession charge. Petitioner neither claims nor alleges facts to suggest that the remaining evidence concerning his knowledge of the presence of the contraband in his apartment and his ability to control it, was undisputed and insufficient to establish a prima facie case of guilt.

Accordingly, petitioner has not established that counsel was "constitutionally compelled" to discuss with him (or file) a pretrial motion to dismiss on this basis prior to him entering his plea. As he has not established counsel's conduct was deficient, he has not demonstrated that his plea was invalid due to ineffective assistance of counsel. He is not entitled to federal habeas relief on this claim.

**Ground 5** <u>Trial counsel was ineffective for failing to dismiss the possession of drug paraphernalia charge, the possession of methamphetamine charge (for the residue in the pipe) and the "pills charges" because the State had convicted petitioner's live-in girlfriend for the same items found in the apartment they shared.</u> (Doc. 1, pp. 11-12).

In his final ground for relief, petitioner asserts that prior to entering his plea, his girlfriend Tarah Deaton took responsibility for the drugs and drug paraphernalia found in their apartment by pleading guilty to possession charges. Petitioner faults trial counsel for failing to move to dismiss the charges "because the State is barred from maintaining dual inconsistent theories of prosecution and conviction." (Doc. 1, p. 12). In support of his claim, he cites to several cases: *United States v. Morrison*, 449 U.S. 361, 365-67 (1981); *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646,

**98 L.Ed.2d 798 (1988);** *Holmes v. South Carolina*, **547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006);** *Smith v. Groose*, **205 F.3d 1045, 1051-52 (8ᵗʰ Cir. 2000);** *United States v. Campa*, **419 F.3d 1219 (11ᵗʰ Cir. 2005);** *State v. Gates*, **826 So.2d 1064 (Fla. 2d DCA 2002) and** *Thompson v. Calderon*, **120 F.3d 1045 (9ᵗʰ Cir. 1997).**[13]

---

[13]In *Morrison*, *supra*, the Court addressed the question whether a post-indictment, pretrial interview of defendants by the investigating officers and without the permission or presence of retained counsel authorized dismissal of the case. The Court held that it did not, where the Sixth Amendment violation had no adverse impact on the criminal proceedings. *Id.*, 449 U.S. at 366-67, 101 S.Ct. at 669.

In *Taylor, supra*, the Court addressed the question whether the trial court violated the Compulsory Process Clause of the Sixth Amendment when it precluded the testimony of a proposed defense witness as a sanction for a discovery violation (failure to disclose the witness in response to a pretrial discovery request). The Court held that it did not, where the case fell into the category of willful misconduct for which the severe sanction of preclusion was justified in order to protect the integrity of the judicial process. *Id.*, 484 U.S. at 413-16, 108 S.Ct. at 655-56.

In *Holmes, supra*, the Court addressed the question whether the trial court denied the defendant a fair trial when it excluded defense evidence of third-party guilt on the ground that the proffered evidence did not raise a reasonable inference as to the defendant's own innocence. The Court held that the ruling did violate the Fourteenth Amendment, because the trial court improperly focused on the strength of the prosecution's case instead of focusing on the probative value or the potential adverse effects of admitting the evidence. *Id.*, 547 U.S. at 328-31, 126 S.Ct. at 1734-35.

In *Smith, supra*, the Eighth Circuit held that the state violated the defendant's due process rights when it used one of the codefendant's two factually contradictory versions of events surrounding the murders to convict the defendant, and then relied on the other version at a later trial to convict someone else of the same murders.

In *Campa, supra*, the Eleventh Circuit addressed the question whether the trial court erred in denying a defendant's motion for change of venue. The court held that it did, but subsequently vacated its opinion. *United States v. Campa*, 429 F.3d 1011 (11ᵗʰ Cir. 2005). On rehearing, the court, taking "the opportunity to clarify circuit law to conform with Supreme Court precedent," again held that the trial court "misfocused its inquiry" under Federal Rule of Criminal Procedure 21(a) governing change of venue. *United States v. Campa*, 459 F.3d 1121 (11ᵗʰ Cir. 2006).

In *Gates, supra*, a Florida appellate court held, among other things, that the state's attempt to argue that the defendant held the victim's head under water until the victim drowned, which was directly inconsistent with the theory of the case against the co-offender where the state asserted that the co-offender was responsible for the drowning, and which resulted int eh co-offender's conviction for first degree murder, was fundamentally unfair and would have deprived the defendant of due process. *Id.*, 826 So.2d at 1067-69.

In *Thompson, supra*, the Ninth Circuit stated, "it is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at

A.    **State Court Decision**

The state court's adjudication of this claim is detailed above.

B.    **Federal Review of State Court Decision**

As with the foregoing grounds, it does not appear the state court evaluated whether counsel was reasonable in failing to take this particular action <u>prior to</u> petitioner entering his plea, or whether her alleged inaction affected the plea process itself (petitioner's ability to make an informed choice between entering a no contest plea and going to trial). Regardless, petitioner is not entitled to federal habeas relief on this claim, because *de novo* review reveals it is without merit.

The cases on which petitioner relies in support of this claim (or at least some of them) found a due process violation where the government took fundamentally opposite positions in different trials involving the same crime. The facts petitioner has provided, however, do not remotely suggest that the state either intended to argue inconsistent theories of guilt as to him and Ms. Deaton, or intended to rely on two factually contradictory versions of events to convict him and Ms. Deaton of the possession charges. There is nothing contradictory about petitioner <u>and</u> Ms. Deaton both being charged with possession of the contraband. *See* 25 AM.JUR. 2D § 157 (2009) ("In a prosecution for unlawful possession of narcotics, it is not necessary to prove that the defendant had exclusive possession of the premises or the area where the drugs have been found. Either actual or constructive possession, therefore, may be either exclusive or joint."); *United States v. Wilson*, 657 F.2d 755 (5th Cir. 1981) (holding that constructive possession may be joint among several individuals); *United States v. Castorena-Jaime*, 285 F.3d 916 (10th Cir. 2002) (same). Petitioner has not cited, and this court has not found, any authority for the proposition that the state is prohibited from prosecuting two persons for joint

---

separate trial, offer inconsistent theories and facts regarding the same crime." *Id*., at 1058, *rev'd on other grounds,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998).

constructive possession of the same contraband.

Based on petitioner's allegations, this court cannot say that counsel was "constitutionally compelled" to discuss with petitioner (or file) a pretrial motion to dismiss the possession charges on this basis before entry of petitioner's plea. As petitioner has not established counsel's conduct was deficient, he has not demonstrated that his plea was invalid due to ineffective assistance of counsel. He is not entitled to federal habeas relief on this claim, and the writ should not issue.

## CONCLUSION

None of petitioner's ineffective assistance claims entitles him to federal habeas relief.

Accordingly, it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1), challenging the convictions and sentences in *State of Florida v. Johnnie Franklin Jeter, Jr.* in the Circuit Court of Bay County, Florida, case nos. 02-2363, 05-679 and 05-680, be DENIED, and the clerk be directed to close the file.

At Pensacola, Florida, this 10th day of July, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).